# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

## WESTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM WEAVER and JUDY WEAVER,** | § | CIVIL ACTION NO. <u>**5:22-cv-00116**</u> |
| Plaintiffs, | § | |
| v. | § | |
| | § | |
| **3M COMPANY** a/k/a MINNESOTA MINING | § | **CIVIL ACTION COMPLAINT** |
| & MANUFACTURING COMPANY; | § | **JURY TRIAL DEMANDED** |
| **AIR & LIQUID SYSTEMS CORPORATION** | § | |
| (sued as successor-by-merger to BUFFALO | § | |
| PUMPS, INC.); | § | |
| **ALFA LAVAL, INC**. (sued individually and as | § | |
| successor-in-interest to THE DELAVAL | § | |
| SEPARATOR COMPANY); (successor-in- | § | |
| interest to SHARPLES CORPORATION); | § | |
| **AMERON INTERNATIONAL** | § | |
| **CORPORATION**, f/k/a BONDSTRAND and | § | |
| successor-in-interest to AMERON MERGER | § | |
| CO. and AMERON, INC., AMERCOAT INC., | § | |
| and AMERICAN PIPE AND | § | |
| CONSTRUCTION; | § | |

**AMETEK, INC.** (sued as successor to HAVEG

INDUSTRIES, INC. and as successor to § 

HERCULES, INC.); §

**BW/IP INTERNATIONAL, INC.** (sued §

individually and as successor-in-interest to §

BYRON JACKSON PUMP COMPANY); §

**CAMERON INTERNATIONAL** §

**CORPORATION** f/k/a COOPER CAMERON §

CORPORATION (sued individually and as §

successor-in-interest to GROVE VALVE); §

**CLYDE UNION, INC.** d/b/a CLYDEUNION §

PUMPS (sued individually and as successor-by- §

merger to UNION PUMP COMPANY); §

**CSX TRANSPORTATION, INC.,** f/k/a §

SEABOARD COAST LINE RAILROAD §

COMPANY; §

**CRANE CO.;** §

**EATON HYDRAULICS LLC** f/k/a EATON §

HYDRAULICS, INC. (sued as successor to §

VICKERS INC.); §

**FLOWSERVE CORPORATION** f/k/a THE §

DURIRON COMPANY, INC. (sued as §

§

successor-by-merger to DURCO                    §

INTERNATIONAL);                                 §

**FLOWSERVE US, INC.** (sued as successor to    §

WILSON SNYDER PUMPS) (sued as successor         §

to EDWARD VALVE, INC.)  (sued as                §

successor to VOGT VALVES) (sued as              §

successor to BW/IP INTERNATIONAL, INC.          §

successor-in-interest to BYRON JACKSON          §

PUMP COMPANY);                                  §

**FMC CORPORATION** (sued individually and      §

as -successor-in-interest to PEERLESS PUMP      §

COMPANY) (successor-in-interest to              §

NORTHERN PUMP COMPANY f/k/a                     §

NORTHERN FIRE APPARATUS                         §

COMPANY); (successor-in-interest to             §

CHICAGO PUMP COMPANY); (successor-in-           §

interest to CROSBY VALVE, INC.) (successor-     §

in-interest to DAYTON DOWD COMPANY);            §

(successor-in-interest to STEARNS               §

COMPANY) (sued as successor-by-merger to        §

LINK-BELT CONSTRUCTION COMPANY);                §

**GENERAL ELECTRIC COMPANY;**                   §

**GOULDS PUMPS, INCORPORATED;**                 §

**HERCULES LLC** f/k/a HERCULES §

INCORPORATED; §

**IMO INDUSTRIES, INC.** (sued individually §

and as successor-in-interest to DELAVAL §

TURBINE, INC.); successor-in-interest to C. H. §

WHEELER MANUFACTURING COMPANY); §

successor-in-interest to ADEL FASTENERS §

and WIGGINS CONNECTORS); §

**KECKLEY MANUFACTURING** §

**COMPANY** (sued as successor to KLIPFEL §

VALVES, INC.); §

**McNALLY INDUSTRIES, LLC** (sued §

individually and as successor-in-interest to §

NORTHERN FIRE APPARATUS §

COMPANY); §

**METROPOLITAN LIFE INSURANCE** §

**COMPANY**, a wholly-owned subsidiary of §

METLIFE INC.; §

**RAILROAD FRICTION PRODUCTS** §

**CORPORATION;** §

**STANDARD MOTOR PRODUCTS, INC.** §

(sued as successor-in-interest to EIS §

AUTOMOTIVE); §

**TATE ANDALE, LLC,** f/k/a TATE TREMCO, §
INC. f/k/a TREMCO MACHINE WORKS, §
INC.; §
**THE WILLIAM POWELL COMPANY;** §
**UNION CARBIDE CORPORATION;** §
**VELAN VALVE CORPORATION;** §
**VIACOMCBS INC.** f/k/a CBS §
CORPORATION f/k/a VIACOM, INC. (sued as §
successor-by-merger to CBS CORPORATION §
f/k/a WESTINGHOUSE ELECTRIC §
CORPORATION); §
**WABATEC GLOBAL SERVICES;** §
**WARREN PUMPS, LLC;** (sued individually §
and as successor-in-interest to QUIMBY PUMP §
COMPANY); §
**WEIL PUMP COMPANY, INC.;** and §
**WEIR VALVES & CONTROLS USA, INC.** §
f/k/a ATWOOD & MORRILL, §
§

Defendants.

## CIVIL ACTION COMPLAINT

PLAINTIFFS, **WILLIAM WEAVER** and **JUDY WEAVER**, sue the above-named
Defendants for compensatory and punitive damages and hereby brings this Civil Action

5

Complaint, and allege:

## **JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the parties pursuant to 28 USC §1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

2.      This Court has personal jurisdiction over the Defendants because Plaintiffs' claims arise from Defendants' conduct in:

(a)      Transacting business in this State, including the sale, supply, purchase, and/or use of asbestos and/or asbestos-containing products, within this State;

(b)      Contracting to supply services or things in the State;

(c)      Commission of a tortious act in whole or in part in this State;

(d)      Having an interest in, using, or possessing real property in this State; and/or

(e)      Entering into a contract to be performed in whole or in part by either party in this State.

3.      Plaintiffs' claims against the Product Defendants, as defined herein, arise out of Defendants' purposeful efforts to serve directly or indirectly the market for their asbestos and/or asbestos-containing products in this State, either through direct sales or through utilizing an established distribution channel with the expectation that their products would be purchased and/or used within North Carolina.

4.      All of the named Defendants are foreign corporations whose substantial and/or systematic business in North Carolina caused injury to Plaintiffs in this State, which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute

6

and the United States Constitution.

5. Pursuant to 28 USC §1391 (2), venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.

## <u>GENERAL ALLEGATIONS</u>

6. Plaintiff **WILLIAM WEAVER** has been diagnosed with lung cancer.

7. Plaintiff **WILLIAM WEAVER**'s cumulative exposure to asbestos as a result of acts and omissions of Defendants and their defective products, individually and together, was a substantial factor in causing Plaintiff's lung cancer and other related injuries and therefore under North Carolina law is the legal cause of Plaintiff's injuries and damages.

8. Plaintiff **WILLIAM WEAVER** was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

9. Plaintiff **WILLIAM WEAVER** worked with, or in close proximity to others who worked with, asbestos-containing materials including but not limited to asbestos-containing products and other asbestos-containing materials manufactured and/or sold by Defendants identified above.

10. Each of the named Defendants is liable for damages stemming from its own tortious conduct or the tortious conduct of an "alternate entity" as hereinafter defined. Defendants are liable for the acts of their "alternate entity" and each of them, in that there has been a corporate name change, Defendant is the successor by merger, by successor in interest, or by other acquisition resulting in a virtual destruction of Plaintiffs' remedies against each such "alternate entity"; Defendants, each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entities" have acquired the assets, product line, or a

7

portion thereof, of each such Defendant; Defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity;" and that each such defendant enjoys the goodwill originally attached to each "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| 3M COMPANY | MINNESOTA MINING & MANUFACTURING COMPANY |
| AIR & LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| ALFA LAVAL, INC. | THE DELAVAL SEPARATOR COMPANY; SHARPLES CORPORATION |
| AMERON INTERNATIONAL CORPORATION | BONDSTRAND; AMERON MERGER CO. AMERON, INC.; AMERCOAT, INC.; AMERICAN PIPE & CONSTRUCTION |
| AMETEK, INC. | HAVEG INDUSTRIES, INC.; HERCULES, INC. |
| BW/IP INTERNATIONAL, INC. | BYRON JACKSON PUMP COMPANY |
| CAMERON INTERNATIONAL CORPORATION | COOPER CAMERON CORPORATION; GROVE VALVE |
| CLYDE UNION, INC. | CLYDEUNION PUMPS; UNION PUMP COMPANY |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CSX TRANSPORTATION, INC. | SEABOARD COAST LINE RAILROAD COMPANY |
| EATON HYDRAULICS LLC | EATON HYDRAULICS, INC.; VICKERS INC. |
| FLOWSERVE CORPORATION | THE DURIRON COMPANY, INC.; DURCO INTERNATIONAL |
| FLOWSERVE US, INC. | WILSON SNYDER PUMPS; EDWARD VALVE, INC.; VOGT VALVES; BW/IP INTERNATIONAL, INC.; BYRON JACKSON PUMP COMPANY |
| FMC CORPORATION | PEERLESS PUMP COMPANY; NORTHERN PUMP COMPANY; NORTHERN FIRE APPARATUS COMPANY; CHICAGO PUMP COMPANY; CROSBY VALVE, INC.; DAYTON DOWD COMPANY; STEARNS COMPANY; LINK-BELT CONSTRUCTION COMPANY |
| HERCULES LLC | HERCULES INCORPORATED |
| IMO INDUSTRIES, INC. | DELAVAL TURBINE, INC.; C. H. WHEELER MANUFACTURING COMPANY; ADEL FASTENERS and WIGGINS CONNECTORS |
| KECKLEY MANUFACTURING COMPANY | KLIPFEL VALVES, INC. |
| McNALLY INDUSTRIES, LLC | NORTHERN FIRE APPARATUS COMPANY |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY | METLIFE, INC. |
| STANDARD MOTOR PRODUCTS, INC. | EIS AUTOMOTIVE |
| TATE ANDALE, LLC | TATE TREMCO, INC.; TREMCO MACHINE WORKS, INC. |
| VIACOMCBS INC | CBS CORPORATION; VIACOM, INC.; CBS CORPORATION; WESTINGHOUSE ELECTRIC CORPORATION |
| WARREN PUMPS, LLC | QUIMBY PUMP COMPANY |
| WEIR VALVES & CONTROLS USA, INC. | ATWOOD & MORRILL |

11.     Plaintiffs have been informed and believe, and thereon allege, that at all times herein mentioned, Defendants or their "alternate entities" were or are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of North Carolina, or the laws of some other state or foreign jurisdiction, and that said Defendants were and/or are authorized to do business in the State of North Carolina, and that said Defendants have regularly conducted business in the State of North Carolina.

12.     Plaintiffs have been informed and believe, and thereon allege, that progressive lung disease, lung cancer, and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

13. As a direct and proximate result of the conduct as alleged within, Plaintiff **WILLIAM WEAVER** has suffered permanent injuries, including, but not limited to, lung cancer and other lung damage, as well as the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his damage in the sum of the amount as the trier of fact determines is proper.

14. As a direct and proximate result of the conduct as hereinafter alleged, Plaintiff **WILLIAM WEAVER** incurred and is continuing to incur liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays, and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time. Plaintiffs request leave to supplement this Court and all parties accordingly when the true and exact cost of Plaintiff **WILLIAM WEAVER**'s medical treatment is ascertained.

15. As a further direct and proximate result of the conduct as hereinafter alleged, Plaintiff **WILLIAM WEAVER** has incurred, and will incur, loss of profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs. Plaintiffs pray leave to supplement this Court and all parties accordingly to conform to proof at the time of trial.

## **PARTIES**

16. The Plaintiffs, **WILLIAM WEAVER** and **JUDY WEAVER**, are citizens of the State of North Carolina where **WILLIAM WEAVER** was exposed to asbestos during the course of his career.

17. The Defendants that manufactured, sold, and/or distributed asbestos-containing products or raw asbestos materials for use in North Carolina and other states at times relevant to

this action are referred to herein as "Product Defendants." At all times relevant to this action, the Product Defendants and the predecessors of the Product Defendants for whose actions the Product Defendants are legally responsible, were engaged in the manufacture, sale, and distribution of asbestos-containing products and raw material.

18. At all times herein mentioned, each of the named Defendants was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, other products containing asbestos and products manufactured for foreseeable use with asbestos products.

19. Defendant, **3M COMPANY** a/k/a MINNESOTA MINING & MANUFACTURING COMPANY, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Minnesota. At all times material hereto, **3M COMPANY** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to 3M masks and respirators. **3M COMPANY** is sued as a Product Defendant. Plaintiffs' claims against **3M COMPANY** arise out of this Defendant's business activities in the State of North Carolina.

20. Defendant, **AIR & LIQUID SYSTEMS CORPORATION** (sued as successor-by-

merger to BUFFALO PUMPS, INC.), was and is a company incorporated under the laws of the State of Pennsylvania with its principal place of business in New Jersey. At all times material hereto, **AIR & LIQUID SYSTEMS CORPORATION developed**, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing pumps. **AIR & LIQUID SYSTEMS CORPORATION** is sued as a Product Defendant. Plaintiffs' claims against **AIR & LIQUID SYSTEMS CORPORATION arise** out of this Defendant's business activities in the State of North Carolina.

21.     Defendant, **ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY); (successor-in-interest to SHARPLES CORPORATION), was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in Virginia. At all times material hereto, **ALFA LAVAL, INC.** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products and pumps. **ALFA LAVAL, INC.** is sued as a Product Defendant. Plaintiffs' claims against **ALFA LAVAL, INC.** arise out of this Defendant's business activities in the State of North Carolina.

22.     Defendant, **AMERON INTERNATIONAL CORPORATION**, f/k/a BONDSTRAND and successor-in-interest to AMERON MERGER CO. and AMERON, INC., AMERCOAT INC., and AMERICAN PIPE AND CONSTRUCTION, was and is a company incorporated under the laws of the State of Wisconsin with its principal place of business in Wisconsin. At all times material hereto, **AMERON INTERNATIONAL CORPORATION** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably

designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products and pipe. **AMERON INTERNATIONAL CORPORATION** is sued as a Product Defendant. Plaintiffs' claims against **AMERON INTERNATIONAL CORPORATION** arise out of this Defendant's business activities in the State of North Carolina.

23. Defendant, **AMETEK, INC.** (sued as successor to HAVEG INDUSTRIES, INC. and as successor to HERCULES, INC.) was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, **AMETEK, INC.** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pipe. **AMETEK, INC.** is sued as a Product Defendant. Plaintiffs' claims against **AMETEK, INC.** arise out of this Defendant's business activities in the State of North Carolina.

24. Defendant, **BW/IP INTERNATIONAL, INC.** (sued individually and as successor-in-interest to BYRON JACKSON PUMP COMPANY was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, **BW/IP INTERNATIONAL, INC.** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pumps. **BW/IP INTERNATIONAL, INC.** is sued as a Product Defendant. Plaintiffs' claims against **BW/IP INTERNATIONAL, INC.** arise out of this Defendant's business activities in the State of North Carolina.

25. Defendant, **CAMERON INTERNATIONAL CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business

in Texas. At all times material hereto, **CAMERON INTERNATIONAL CORPORATION** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and valves. **CAMERON INTERNATIONAL CORPORATION** is sued as a Product Defendant. Plaintiffs' claims against **CAMERON INTERNATIONAL CORPORATION** arise out of this Defendant's business activities in the State of North Carolina.

26. Defendant, **CLYDE UNION, INC.** was and is a company incorporated under the laws of the State of Michigan with its principal place of business in North Carolina. At all times material hereto, **CLYDE UNION, INC.** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pumps. **CLYDE UNION, INC.** is sued as a Product Defendant. Plaintiffs' claims against **CLYDE UNION, INC.** arise out of this Defendant's business activities in the State of North Carolina.

27. Defendant, **CSX TRANSPORTATION, INC.** was and is a company incorporated under the laws of the State of Virginia with its principal place of business in Florida. At all times material hereto, **CSX TRANSPORTATION, INC.** is being sued as an employer defendant. Plaintiffs' claims against **CSX TRANSPORTATION, INC.** arise out of this Defendant's business activities in the State of North Carolina.

28. Defendant, **CRANE CO.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. At all times material hereto, **CRANE CO.** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment,

including, but not limited to, asbestos-containing products, gaskets, valves, feed tanks and pumps. **CRANE CO.** is sued as a Product Defendant. Plaintiffs' claims against **CRANE CO.** arise out of this Defendant's business activities in the State of North Carolina.

29. Defendant, **EATON HYDRAULICS LLC** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Ohio**.** At all times material hereto, **EATON HYDRAULICS LLC** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and hydraulic pumps. **EATON HYDRAULICS LLC** is sued as a Product Defendant. Plaintiffs' claims against **EATON HYDRAULICS LLC** arise out of this Defendant's business activities in the State of North Carolina.

30. Defendant, **FLOWSERVE CORPORATION** was and is a company incorporated under the laws of the State of New York with its principal place of business in Texas. At all times material hereto, **FLOWSERVE CORPORATION** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pumps. **FLOWSERVE CORPORATION** is sued as a Product Defendant. Plaintiffs' claims against **FLOWSERVE CORPORATION** arise out of this Defendant's business activities in the State of North Carolina.

31. Defendant, **FLOWSERVE US, INC.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, **FLOWSERVE US, INC.** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products

16

and/or equipment, including, but not limited to, asbestos-containing products, and pumps. **FLOWSERVE US, INC.** is sued as a Product Defendant. Plaintiffs' claims against **FLOWSERVE US, INC.** arise out of this Defendant's business activities in the State of North Carolina.

32. Defendant, **FMC CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, **FMC CORPORATION** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pumps. **FMC CORPORATION** is sued as a Product Defendant. Plaintiffs' claims against **FMC CORPORATION** arise out of this Defendant's business activities in the State of North Carolina.

33. Defendant, **GENERAL ELECTRIC COMPANY** was and is a company incorporated under the laws of the State of New York with its principal place of business in Boston. At all times material hereto, **GENERAL ELECTRIC COMPANY** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and a supplier of GE diesel locomotive supplies. **GENERAL ELECTRIC COMPANY** is sued as a Product Defendant. Plaintiffs' claims against **GENERAL ELECTRIC COMPANY** arise out of this Defendant's business activities in the State of North Carolina.

34. Defendant, **GOULDS PUMPS, INC.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, **GOULDS PUMPS, INC.** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products and pumps.

**GOULDS PUMPS, INC.** is sued as a Product Defendant. Plaintiffs' claims against **GOULDS PUMPS, INC.** arise out of this Defendant's business activities in the State of North Carolina.

35.     Defendant, **HERCULES LLC** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Delaware. At all times material hereto, **HERCULES LLC** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pipe. **HERCULES LLC** is sued as a Product Defendant. Plaintiffs' claims against **HERCULES LLC** arise out of this Defendant's business activities in the State of North Carolina.

36.     Defendant, **IMO INDUSTRIES, INC** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, **IMO INDUSTRIES, INC** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, turbines, fasteners, and clamps. **IMO INDUSTRIES, INC** is sued as a Product Defendant. Plaintiffs' claims against **IMO INDUSTRIES, INC** arise out of this Defendant's business activities in the State of North Carolina.

37.     Defendant, **KECKLEY MANUFACTURING COMPANY** was and is a company incorporated under the laws of the State of Illinois with its principal place of business in Illinois. At all times material hereto, **KECKLEY MANUFACTURING COMPANY** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and valves. **KECKLEY MANUFACTURING COMPANY** is sued

as a Product Defendant. Plaintiffs' claims against **KECKLEY MANUFACTURING COMPANY** arise out of this Defendant's business activities in the State of North Carolina.

38.     Defendant, **McNALLY INDUSTRIES, LLC** was and is a company incorporated under the laws of the State of Wisconsin with its principal place of business in Wisconsin. At all times material hereto, **McNALLY INDUSTRIES, LLC** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pumps. **McNALLY INDUSTRIES, LLC** is sued as a Product Defendant. Plaintiffs' claims against **McNALLY INDUSTRIES, LLC** arise out of this Defendant's business activities in the State of North Carolina.

39.     Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. **METROPOLITAN LIFE INSURANCE COMPANY** has done and does business in the State of North Carolina. **METROPOLITAN LIFE INSURANCE COMPANY** is named as a conspiracy defendant.

40.     Defendant, **RAILROAD FRICTION PRODUCTS CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in North Carolina. At all times material hereto, **RAILROAD FRICTION PRODUCTS CORPORATION** is being sued as an employer Defendant.

41.     Defendant, **STANDARD MOTOR PRODUCTS, INC.** was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. At all times material hereto, **STANDARD MOTOR PRODUCTS, INC.** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed

to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and brakes. **STANDARD MOTOR PRODUCTS, INC.** is sued as a Product Defendant. Plaintiffs' claims against **STANDARD MOTOR PRODUCTS, INC.** arise out of this Defendant's business activities in the State of North Carolina.

42.     Defendant, **TATE ANDALE, LLC** was and is a company incorporated under the laws of the State of Maryland with its principal place of business in Maryland. At all times material hereto, **TATE ANDALE, LLC** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and cooler and valves. **TATE ANDALE, LLC** is sued as a Product Defendant. Plaintiffs' claims against **TATE ANDALE, LLC** arise out of this Defendant's business activities in the State of North Carolina.

43.     Defendant, **THE WILLIAM POWELL COMPANY** was and is a company incorporated under the laws of the State of Ohio with its principal place of business in Ohio. At all times material hereto, **THE WILLIAM POWELL COMPANY** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pumps. **THE WILLIAM POWELL COMPANY** is sued as a Product Defendant. Plaintiffs' claims against **THE WILLIAM POWELL COMPANY** arise out of this Defendant's business activities in the State of North Carolina.

44.     Defendant, **UNION CARBIDE CORPORATION**, was and is a company incorporated under the laws of the State of New York with its principal place of business in Texas. **UNION CARBIDE CORPORATION** has done and does business in the State of North Carolina. **UNION CARBIDE CORPORATION** is named as a premise defendant.

45. Defendant, **VELAN VALVE CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Vermont. At all times material hereto, **VELAN VALVE CORPORATION** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, valves and pumps. **VELAN VALVE CORPORATION** is sued as a Product Defendant. Plaintiffs' claims against **VELAN VALVE CORPORATION** arise out of this Defendant's business activities in the State of North Carolina.

46. Defendant, **VIACOMCBS INC.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York**.** At all times material hereto, **VIACOMCBS INC.** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pumps. **VIACOMCBS INC.** is sued as a Product Defendant. Plaintiffs' claims against **VIACOMCBS INC.** arise out of this Defendant's business activities in the State of North Carolina.

47. Defendant, **WABATEC GLOBAL SERVICES** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in South Carolina. At all times material hereto, **WABATEC GLOBAL SERVICES** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and Westinghouse Air Brakes. **WABATEC GLOBAL SERVICES** is sued as a Product Defendant. Plaintiffs' claims against **WABATEC GLOBAL SERVICES** arise out of this Defendant's business activities in the State of North Carolina.

48.     Defendant, **WARREN PUMPS, LLC** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Massachusetts. At all times material hereto, **WARREN PUMPS, LLC** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pumps. **WARREN PUMPS, LLC** is sued as a Product Defendant. Plaintiffs' claims against **WARREN PUMPS, LLC** arise out of this Defendant's business activities in the State of North Carolina.

49.     Defendant, **WEIL PUMP COMPANY, INC.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Wisconsin. At all times material hereto, **WEIL PUMP COMPANY, INC.** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pumps. **WEIL PUMP COMPANY, INC.** is sued as a Product Defendant. Plaintiffs' claims against **WEIL PUMP COMPANY, INC.** arise out of this Defendant's business activities in the State of North Carolina.

50.     Defendant, **WEIR VALVES & CONTROLS USA, INC** was and is a company incorporated under the laws of the State of Massachusetts with its principal place of business in Texas. At all times material hereto, **WEIR VALVES & CONTROLS USA, INC** developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including, but not limited to, asbestos-containing products, and pumps. **WEIR VALVES & CONTROLS USA, INC** is sued as a Product Defendant. Plaintiffs' claims against **WEIR VALVES & CONTROLS USA, INC** arise out of this Defendant's business activities in the State of North Carolina.

## BACKGROUND FACTS

51.    Plaintiffs bring this action for monetary damages as a result of Plaintiff **WILLIAM WEAVER** contracting an asbestos-related lung cancer.

52.    Plaintiff **WILLIAM WEAVER** was diagnosed with lung cancer on April 1, 2019.

53.    Plaintiff's lung cancer was caused by his exposure to asbestos during the course of his employment.

54.    Plaintiff was exposed to Defendants' asbestos-containing products while employed as a Welding Inspector in Newport News VA from approximately 1962-1964.

55.    Plaintiff performed a variety of tasks including but not limited to, tearing out asbestos-containing insulation, pumps, valves, and pipes in preparation for inspections.  All of these activities exposed Plaintiff to asbestos.

56.    Plaintiff was also exposed to Defendants' asbestos-containing products while employed as a Railway Yard-worker in North Carolina from approximately 1966-1977.

57.    Plaintiff performed a variety of tasks, including but not limited to, cleaning asbestos from rail cars, tearing out asbestos from cabs, and reinsulating them with asbestos insulation.

58.    Plaintiff worked with, or in close proximity to others who worked with, asbestos-containing materials including but not limited to, asbestos-containing products and other asbestos-containing materials manufactured, sold, supplied and/or distributed by Defendants identified above.

59.    Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

## FIRST CAUSE OF ACTION

## DEFECTIVE DESIGN

60.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

61.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment, or, are otherwise jointly and severally liable due to their involvement in the underlying facts.

62.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products, or equipment, to be placed in the stream of interstate commerce with the result of that said asbestos and asbestos-containing materials, products or equipment, came into use by Plaintiff **WILLIAM WEAVER** or by coworkers who were working with asbestos-containing materials in close proximity to Plaintiff.

63.     Plaintiff worked with and/or was exposed to the asbestos and asbestos-containing materials, products, or equipment, mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most or all of the exposure being within the State of North Carolina.

64.     Plaintiff was exposed to Defendants' asbestos and asbestos-containing materials, products, or equipment, which exposure directly and proximately caused him to develop an illness known and designated as lung cancer.

65.     Defendants, acting by and through their servants, agents and employees, duly

authorized and acting within the scope and authority of their employment, had a duty to design, manufacture, and sell products that were not unreasonably dangerous or defective and/or a duty to warn the Plaintiff and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

66. Defendants knew or should have known, that persons working around asbestos-containing products in their employment, would be exposed to asbestos in quantities that could cause lung cancer.

67. Plaintiff sustained injuries caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied, or otherwise put said asbestos or asbestos-containing products, materials, or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff's body, lungs, respiratory system, skin, health, and general well-being. Further, Defendants knew or in the exercise of reasonable care should have known that Plaintiff would not know of such danger to his health.

68. Plaintiff's illness and disability are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that, even though the Defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment, were deleterious, poisonous, and highly harmful to Plaintiff's body, lungs, respiratory system, skin, and health.

69. Defendants, at the time of designing, manufacturing, distributing, selling, or

otherwise placing asbestos and/or asbestos-containing products, materials or equipment, into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products. The products in question were defective at the time they left the control of the Defendants.

70.     The relevant Defendants who were involved in manufacturing, designing, and producing the asbestos-containing products herein had a duty to use reasonable care throughout the manufacturing process, including making sure the product is free of any potentially dangerous defect in manufacturing or design.

71.     While non-asbestos alternative designs and formulations of the relevant products and equipment were available prior to when some or all of the Plaintiff's injurious exposure occurred, the relevant Defendants negligently failed to adopt a non-asbestos design and formulation during the pertinent times.

72.     Under N.C. Gen. Stat. § 99B-6, the relevant Defendants are liable for inadequate design or formulation in that they qualify as manufacturers within the scope of the statute and they acted unreasonably in designing or formulating the product when there was a safer, practical, feasible, and otherwise reasonable alternative design or formulation.

73.     During some or all of the pertinent times, asbestos-free product designs and formulations could have accomplished the same functions as the asbestos products.

74.     Defendants were negligent and breached their duty of due care to Plaintiff by taking or failing to take the actions as previously alleged to avoid harm to the Plaintiff and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials or equipment placed by Defendants in the stream of commerce.

75.     The hazards posed by exposure to asbestos and/or asbestos-containing products, materials, or equipment, and the resulting injuries and damages to Plaintiff were reasonably foreseeable or should have been reasonably foreseen by Defendants.

76.     Defendants acted unreasonably by continuing to use a known cancer-causing product, to-wit: asbestos.

77.     At the time the products left Defendants' control, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

78.     As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Plaintiff **WILLIAM WEAVER** developed lung cancer, as a consequence of which, through no fault of his own, he is severely injured, disabled and damaged.

79.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.


### SECOND CAUSE OF ACTION

### FAILURE TO WARN

80.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

81.     Under N.C. Gen. Stat. § 99B-5, the relevant Defendants are liable for negligent failure to warn and inadequate warning or instruction, in that they were each a manufacturer or seller of a product who acted unreasonably in failing to provide such warning or instruction.  The failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought.  At the time the relevant asbestos-containing products left the control of the relevant Defendant manufacturers or sellers, the products without an adequate warning or

instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

82.     In the alternative, after the relevant asbestos-containing products left the control of the relevant Defendant manufacturer or sellers, the manufacturers or sellers became aware of or in the exercise of ordinary care should have known that the products posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances. Plaintiffs plead negligence and strict liability causes of action.

83.     The relevant Defendants breached their duties and were negligent in the following acts and/or omissions:

(a)     Failed to advise Plaintiff of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products, or equipment;

(b)     Failed or omitted to provide the Plaintiff with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

(c)     Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products, or equipment, to warn the handlers of the dangers to health in coming in

contact with said asbestos and asbestos-containing materials, products, or equipment;

(d)     Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products, or equipment;

(e)     Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing materials, products, or equipment;

(f)     Did not recommend methods to reduce exposures;

(g)     After discovering that the asbestos exposure caused a progressive lung disease, the Defendants did not inform the Plaintiff of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

## **THIRD CAUSE OF ACTION**

## **BREACH OF IMPLIED WARRANTY**

84.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

85.     The Defendants impliedly warranted that said asbestos materials were of good and

merchantable quality and fit for their intended use.

86.     The implied warranty made by the Defendants that the asbestos and asbestos-containing materials, products, or equipment, were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein the Plaintiff carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

87.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff developed an illness, to-wit: Lung Cancer.

88.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.


## FOURTH CAUSE OF ACTION

## GROSS NEGLIGENCE; WILLFUL, WANTON, AND RECKLESS CONDUCT


89.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

90.     Plaintiff **WILLIAM WEAVER** and others in his position worked in close proximity to the asbestos and asbestos-related materials used, sold, or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the Defendants, and each of them.

91.     The Defendants have known or should have known for decades of medical and scientific data which clearly indicates that the products, asbestos and asbestos-containing products,

were hazardous to the health and safety of the Plaintiff and others in the Plaintiff's position, and prompted by pecuniary motives, the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said Defendants. As a result, Plaintiff has been severely damaged as is set forth below.

92.    The Defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure for many decades, thus denying Plaintiff the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, stop smoking, and avoiding further dust exposure.   Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

(a)    failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

(b)    failure to issue recall type letters to prior users;

(c)    frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)    rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the possibility of adverse effects on profits; and

(e)    The intentional inadequacy of (and delay in the use of) the warnings on asbestos products.

93.     The acts of the Defendants, and each of them, as hereinabove set forth were intentional and willful and done with willful disregard of the safety of Plaintiff and others similarly situated at a time when Defendants, and each of them, had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products or equipment, upon the body of human beings, including Plaintiff and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Plaintiff and others similarly situated, and Plaintiff is thereby entitled to punitive damages.

94.     Accordingly, as a result of the Defendants' conduct in which they acted in willful, wanton, gross negligence and in total disregard for the health and safety of the user or consumer, such as Plaintiff, Plaintiff therefore seeks exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

95.     The Defendants' above-described recurring conduct, acts, omissions, negligence, and impropriety included aggravating factors giving rise to a claim of punitive damages under Chapter 1D of the North Carolina General Statutes.

96.     Pursuant to N.C. Gen. Stat. § 1D-15(a), each Defendant is properly liable for punitive damages in this action in that Defendant is liable for compensatory damages and has committed one or more aggravating acts or omissions justifying an award of punitive damages, including without limitation, recurring acts of egregious and reckless behavior, and specific instances of willful and wanton conduct.

97.     The recurring conduct, acts, omissions, negligence, and impropriety of the Defendants were willful, wanton, malicious, and in reckless disregard for the rights and interests of the Plaintiff and justify an award of punitive damages. Accordingly, Plaintiff demands judgment against Defendant for punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### CONSPIRACY

### (Against Defendant METROPOLITAN LIFE INSURANCE COMPANY)

98.     Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products and/or equipment to which Plaintiff **WILLIAM WEAVER** was exposed, and such assistance by METROPOLITAN LIFE INSURANCE COMPANY aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products and/or equipment by such manufacturers which proximately caused Plaintiff **WILLIAM WEAVER**'s illness, injuries, and/or disabilities.

99.     In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE INSURANCE COMPANY failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos. METROPOLITAN LIFE INSURANCE COMPANY also caused to be published intentionally false, misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

100.     Plaintiff **WILLIAM WEAVER** unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE INSURANCE COMPANY's tests and information

dissemination, the results of which METROPOLITAN LIFE INSURANCE COMPANY published in leading medical journals.

101.     As a direct and proximate contributing result of METROPOLITAN LIFE INSURANCE COMPANY's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff **WILLIAM WEAVER** from asbestos exposure was increased, and (ii) **WILLIAM WEAVER** suffered the injuries previously described.

102.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and gain, METROPOLITAN LIFE INSURANCE COMPANY acted willfully, wantonly, and with malice in calculated disregard for the welfare of the general public, including Plaintiff **WILLIAM WEAVER**. Plaintiff seeks compensatory and punitive damages against METROPOLITAN LIFE INSURANCE COMPANY as a result.

## SIXTH CAUSE OF ACTION

## LOSS OF CONSORTIUM

103.     Plaintiffs herein incorporate by reference Paragraphs 1 through 77 of this Petition.

104.     Plaintiff **JUDY WEAVER** is and was at all relevant times herein the wife of Plaintiff **WILLIAM WEAVER**.

105.     As a direct and proximate result of Defendants' conduct set forth in this Sixth Cause of Action and the injury suffered by her husband **WILLIAM WEAVER**, Plaintiff **JUDY WEAVER** has suffered, and will suffer in the future, interference with and impairment of their marital relationship and all those elements of married life Plaintiff **JUDY WEAVER** was accustomed to receiving including, but not limited to, support, devotion, care, society, and consortium.

WHEREFORE, Plaintiffs pray judgment be entered against the Defendants jointly and severally for actual and compensatory damages as are fair and reasonable, in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, including the cost of this action and any other such relief as the Court deems just and equitable.

## DAMAGES

106.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

107.     As a result of his exposure to asbestos attributable to Defendants, Plaintiff **WILLIAM WEAVER** has suffered and sustained very serious injuries to his person, to wit: lung cancer.

108.     Plaintiff has further suffered great pain, extreme nervousness, and mental anguish as a direct result of the aforesaid injuries.

109.     Plaintiff verily believes that his injuries and illnesses are recurrent in nature and that he will be forced to suffer same for the remainder of his life; that his enjoyment of life has been greatly impaired; that he has been forced to remove himself from his job due to his poor

health resulting in substantial lost wages and loss of earning capacity; and further, that his expected life span has been greatly shortened.

110.     Plaintiffs allege that as a result of the aforesaid illnesses, he has been forced to incur large amounts of medical expenses by way of doctor and drug bills and verily believes that he will be forced to incur additional expenses in an effort to treat his illnesses as aforesaid alleged.

WHEREFORE, Plaintiffs verily believe they are entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, failure to warn, and other breaches of duty as alleged herein proximately caused by the fault of the Defendants, lost wages, special damages, and punitive damages in an amount to be determined by the trier of fact, plus the costs of this action.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury of all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

A.     Award the Plaintiffs compensatory damages, in an amount to be determined at trial;

B.     Award the Plaintiffs punitive damages;

C.     Award the Plaintiffs pre-judgment and post-judgment interest and any other costs, expenses, or fees to which the Plaintiffs may be entitled by law;

D.      Award the Plaintiffs loss of consortium damages; and

E.     Award the Plaintiffs such other and further relief as is just and proper.

**A JURY IS RESPECTFULLY DEMANDED TO TRY THESE ISSUES.**

This 28th day of March, 2022.

Respectfully submitted,

*/s/ Janet Ward Black*
Janet Ward Black
**WARD BLACK LAW**
208 West Wendover Avenue
Greensboro, NC 27401
Telephone: (336) 333-2244
Fax: (336) 510-2168
Email: jwblack@wardblacklaw.com
Attorney for Plaintiffs

AND

**FEARS NACHAWATI, PLLC**
DARREN MCDOWELL (*pro hac vice pending*)
TX State Bar No. 24025520
STEVE SCHULTE (*pro hac vice pending*)
TX State Bar No. 24051306
5473 Blair Road
Dallas, TX 75231
Telephone: (214) 890-0711
dmcdowell@fnlawfirm.com
schulte@fnlawfirm.com
Attorneys for Plaintiffs